UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Shawn C. H., | Case No. 22-cv-1937 (ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff Shawn C. H.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 10) and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Defendant" or "the Commissioner") Motion for Summary Judgment (Dkt. 14). Plaintiff filed this case seeking judicial review of a final decision by the Commissioner denying his application for disability insurance benefits. For the reasons stated below, Plaintiff's Motion is granted in part and Defendant's Motion is denied.

## I.   BACKGROUND

Plaintiff filed a claim for Social Security disability benefits and Supplemental Security Insurance disability benefits on May 11, 2020, alleging disability beginning on April 24, 2018. (R. 93, 368-69, 382.)[1] His claims were denied initially on August 11, 2020, and on reconsideration on September 18, 2020. (R. 93.) He sought a hearing

---

[1] The Administrative Record ("R.") can be found at Docket Entry No. 8.

before an Administrative Law Judge ("ALJ") and the ALJ held a hearing by videoconference on June 9, 2021. (R. 93.)

The Eighth Circuit has described the five-step process established by the Commissioner for determining if an individual is disabled as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Here, the ALJ determined Plaintiff had severe impairments of left shoulder degenerative joint disease ("DJD"), cervical degenerative disc disease ("DDD"), bilateral hearing loss, tinnitus, left leg soft tissue injuries/scarring, costochondral neuralgia, hypertension, status post-concussion/traumatic brain injury ("TBI"), and adjustment disorder with mixed anxiety and depressed mood. (R. 16.) The ALJ then determined Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), i.e., lift/carry 10 pounds occasionally and less than 10 pounds frequently, sit for at least 6/8 hours, and stand/walk for no more than 2/8 hours, except he should not climb ladders, ropes or scaffolds, or crawl. He can occasionally stoop, crouch, kneel, and climb ramps and stairs. He should not work on narrow, moving or slippery surfaces. He can occasionally reach overhead with the left upper extremity but frequently perform all other reaching with either upper extremity. He can occasionally use foot pedals on the left. He can have occasional exposure to extremes of heat but no work exposure to unprotected heights or dangerous, moving machinery. He can

>work in an environment with a noise intensity level of moderate or less. He can understand, remember and apply information to perform simple tasks, make simple decisions, focus on and complete simple tasks in a timely manner and adapt to routine changes in the workplace; but he can do no work on assembly lines.

(R. 97-98.)

On June 30, 2021, the ALJ issued an unfavorable decision. (R. 90-113.) The ALJ found that Plaintiff could not perform his past relevant work with this RFC, but found at step five that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform, including representative occupations such as table worker, bench hand, and final assembler. (R. 106-07.)

On August 26, 2021, Plaintiff requested review of that decision. (R. 330-32.) About a month later, on September 27, 2021, Plaintiff submitted additional argument in support of his appeal as well as a September 7, 2021 report from Steven D. Lockman, M.D. (R. 57-86, R. 481-85.) On November 30, 2021, Plaintiff submitted further argument in support of his appeal (referencing his September 7, 2021 letter) as well as 185 pages of a transcript of a November 2, 2021 deposition of Dr. Lockman. (R. 8-56.)

On June 30, 2022, the Appeals Council denied further review, making the ALJ's denial the final decision on this matter. (R. 1-7.) The Appeals Council found that Dr. Lockman's evaluation and testimony did not relate to the period at issue because the records were "dated September 7, 2021 to November 2, 2021" and the ALJ "decided your case through June 30, 2021." (R. 2.) The Appeals Council explained: "This additional

3

evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2021." (R. 2.)

Plaintiff now asks the Court to reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for further proceedings. (Dkt. 11 at 1.)

## II.     LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error in law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018). As defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (marks and citation omitted). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions

4

is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

### III.   DISCUSSION

Plaintiff argues that the Appeals Council's refusal to consider Dr. Lockman's report and deposition testimony is an error of law that requires remand. (Dkt. 11 at 13.) As background, the Appeals Council will grant a request to review a case if 1) it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision; 2) there was a reasonable probability the evidence would change the outcome of the decision; and 3) the claimant showed good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935. *See* 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b).

Plaintiff argues Dr. Lockman's report and deposition testimony are "new in that they were with an entirely different and highly specialized medical expert with the specific objective of providing treatment recommendations," and "Plaintiff had not at any point been evaluated by someone like Dr. Lockman and Dr. Lockman provided comprehensive and skilled insight into the nature and extent of Plaintiff [sic] medical conditions as well as what to do about them." (*Id.* at 14.) Plaintiff contends that Dr. Lockman's opinions relate to the same injuries and period of disability alleged by Plaintiff in his May 2020 application for disability benefits and notes that Plaintiff had been referred to Dr. Lockman the month before his June 2021 hearing. (*Id.* at 14-15.) Plaintiff further argues that the opinions are material because they do not "'merely detail

5

after-acquired conditions or postdecision deterioration of a pre-existing condition.'" (*Id.* at 14 (quoting *Deanna T. v. Kijakazi*, No. 20-CV-576 (ECW), 2021 WL 3620172, at *22 (D. Minn. Aug. 16, 2021).)

Plaintiff further contends that there is a reasonable probability that Dr. Lockman's opinions would have changed the outcome, including because Dr. Lockman opined that people may not accurately recall details or timelines of their treatment, particularly where, as here, a brain injury is involved. (*Id.* at 15-16.) Plaintiff argues that while the ALJ "assigned little to no weight to the other medical opinions on grounds of vagueness, incomplete, and/or otherwise inconsistent with other records or reports, Dr. Lockman's opinions are detailed, comprehensive, and consistent with the rest of the record." (*Id.* at 15.) Plaintiff contends that Dr. Lockman's opinions should have been considered in view of the ALJ's assignment of little weight to certain other experts' opinions. (*Id.* at 15-16.)

The Commissioner responds that the Appeals Council's denial of review of the ALJ's decision is not reviewable by this Court because it is a non-final agency action. (Dkt. 15 at 7-8.) The Commissioner also argues that Plaintiff did not make any argument showing the "good cause" required for the Appeals Council to consider the new evidence. (*Id.* at 8.) The Commissioner asserts there is no good cause because on May 3, 2021, Charles M. Kendall, M.D., referred Plaintiff to the Minnesota Neurorehabilitation Institute at Plaintiff's request; Plaintiff's attorney wrote a letter to Dr. Lockman at the Minnesota Neurorehabilitation Institute on May 19, 2021; but Plaintiff's attorney agreed that there was no other evidence for the record when the ALJ asked at the end of the June

6

9, 2021 hearing.[2] (Dkt. 15 at 8-9 (citing R. 57, 145, 1467).) The Commissioner further notes that Plaintiff did not mention the existence of new evidence (or that it might be forthcoming) when he requested review of the ALJ's decision on August 26, 2021, even though Dr. Lockman had already examined him on August 18, 2021. (*Id.* at 9 (citing R. 57, 331).)

The Commissioner further argues that "Plaintiff's argument that there was a reasonable probability that Dr. Lockman's evaluation and opinion would change the outcome of the ALJ's decision lacks merit." (*Id.* at 10-11.) Finally, the Commissioner argues "substantial evidence supports the ALJ's conclusion that Plaintiff's allegations concerning his memory and concentration were not entirely borne out by the record" and that the ALJ's decision's overall is supported by substantial evidence. (*Id.* at 13.)

Here, the Notice of Appeals Council Action stated:

> This is about your request for review of the Administrative Law Judge's decision dated June 30, 2021. You submitted reasons that you disagree with the decision. We considered the reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision.
>
> . . .
>
> We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.
>
> This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.

---

[2] The ALJ issued the unfavorable decision on June 30, 2021. (R. 90, 114.) Dr. Lockman evaluated Plaintiff on August 18, 2021 and issued his report on September 7, 2021. (R. 57.) On November 2, 2021, Dr. Lockman was deposed in Plaintiff's lawsuit against his former employer concerning his workplace accident. (R. 9.)

7

(R. 1.)  The Appeals Council exhibited Plaintiff's August 26, 2021 request for review and September 27, 2021 brief as Exhibit 18B and 15E, respectively.  (*See* R. 5.)

The Appeals Council further stated in the "Additional Evidence" section of its Notice:

> You submitted 79 pages of records from Steven D. Lockman, M.D. dated September 7, 2021 to November 2, 2021. The Administrative Law Judge decided your case through June 30, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2021.

(R. 2.)  The Appeals Council did not exhibit Dr. Lockman's report and testimony, although they are part of the record.  (*See* R. 8-86.)

The Court construes Plaintiff's "error of law" argument to be that the Appeals Council did not comply with 20 C.F.R. § 404.970 and 20 C.F.R. § 416.1470 when refusing to consider Dr. Lockman's report and testimony.  (*See* Dkt. 11 at 13-17.) "Whether the evidence is new, material and related to the relevant period is a question of law reviewed de novo." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).  The Appeals Council's failure to review evidence that is new, material, and related to the relevant period may be a basis for remand by a reviewing court.  *Id.*

Here, the only reason given by the Appeals Council for not considering Dr. Lockman's report and testimony was that the "additional evidence does not relate to the period at issue," noting that the records were dated September 7, 2021 to November 2, 2021.  (R. 2.)  The Commissioner argues that determination is correct because "Dr. Lockman did not indicate that his opinion regarding Plaintiff's restrictions was

retroactive to the date of Plaintiff's 2018 injury, and in fact, did not use any past tense language when describing Plaintiff's limitations." (Dkt. 14 at 10 (citing R. 83).)

However, notwithstanding the absence of express statements of retroactivity or past tense language, the Court concludes that Dr. Lockman's report does in fact relate to the period at issue, that is, April 28, 2018 to the ALJ's decision on June 30, 2021. In the report, Dr. Lockman reviewed Plaintiff's medical history beginning on May 2, 2018, when he presented to a clinic following the blast injury that resulted in his impairments. (*See* R. 58-63.) That review included reports of headaches, cognitive impairment, difficulty with memory and word retrieval, tinnitus, and mixed anxiety and depressed mood in late 2018 and through 2020. (R. 59-63.) Dr. Lockman considered the history Plaintiff provided him during the August 18, 2021 evaluation beginning with the April 26, 2018 blast and continuing through the date of the evaluation. (R. 64-68.) Dr. Lockman opined:

> [Plaintiff] sustained a blast-induced mild traumatic brain injury as a result of the April 26, 2018 explosion. This diagnosis is supported by his mechanism of injury, his loss of consciousness, as well as his constellation of symptoms that are unique and characteristic in individuals who have sustained a mild traumatic brain injury.
>
> . . .
>
> In my opinion, [Plaintiff] likely sustained a primary blast injury to his brain. He also likely experienced a tertiary injury from being thrown through the air. [Plaintiff's] injury meets the American Congress of Rehabilitation definition of mild traumatic brain injury. In many cases, routine brain imaging and neurological examinations are normal following a mild traumatic brain injury. Additionally, the pathophysiology involved in a brain injury is complex and evolves with time. Subtle symptoms associated with brain injuries are often masked by more severe symptoms of trauma-related musculoskeletal pain. As a result, all of the symptoms associated with a

> traumatic brain injury are not necessarily immediately apparent at the time of the accident. Although many individuals fully recover from mild traumatic brain injuries, a large percentage of patients continue to experience brain injury-related symptoms long after their injury. In many cases, the symptoms are permanent. It is no longer the consensus of the medical community that the vast majority of individuals with a mild traumatic brain injury recover within a few months. In fact, it has been demonstrated in the literature. [Plaintiff's] ongoing symptoms are consistent with these findings.

(R. 72-73 (endnotes omitted).)

The Court also notes Dr. Lockman's opinion that Plaintiff's ongoing symptoms are consistent with the findings "that most patients with mild traumatic brain injuries report persistent, injury-related life difficulties at 1-year postinjury" (R. 73)—which in Plaintiff's case, would be April 2019, well within the period at issue.  Dr. Lockman further opined that Plaintiff's symptoms, including posttraumatic fatigue, mood disorder and posttraumatic stress disorder, cognitive symptoms, and chronic left leg pain were attributable to the 2018 blast.  (*See generally* R. 73-77.)  He specifically referenced Plaintiff's "brain injury symptoms nearly 3 ½ years after his injury" (R. 76) and opined that "[b]ecause of [Plaintiff's] traumatic brain injury, he suffers from permanent impairments in the areas described above" (R. 82).  Nothing in Dr. Lockman's report suggests that the impairments or symptoms he describes arose after June 30, 2021.  Dr. Lockman also testified, based on Plaintiff's complaints to a neurologist and reports of dizziness and headaches to another physician in May 2019, as well as reports of anxiety in August 2018, that "as time went on, certainly at approximately the one-year mark, [Plaintiff] was expressing the ongoing symptoms that he had been experiencing."  (R. 22 at 52:9-20; *see also* R. 59 (describing reports of "issues related to anxiety from the

10

explosion" and advice "to start counseling through his union to work on his PTSD"); R. 61 (describing reports of dizziness and frequent headaches at May 3, 2019 doctor's visit and "tinnitus, dizziness, headaches, and cognitive impairment" at May 16, 2019 neurology visit).)

It appears that the Appeals Council relied on the September 7, 2021 and November 2, 2021 dates of Dr. Lockman's report and testimony when concluding the additional evidence did not relate to the period at issue. (*See* R. 1 ("You submitted 79 pages of records from Steven D. Lockman, M.D. dated September 7, 2021 to November 2, 2021. The Administrative Law Judge decided your case through June 30, 2021. This additional evidence does not relate to the period at issue.").) However, "[t]he timing of the examination is not dispositive of whether evidence is material. . . . Medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990). Here, the Court concludes that Dr. Lockman's report and deposition testimony relate to the period at issue—April 24, 2018 to June 30, 2021—as they identify and describe Plaintiff's symptoms as "persistent" and attribute them to the April 2018 blast. *See Lucas v. Saul*, No. 2:18 CV 45 CDP, 2019 WL 4221519, at *3 (E.D. Mo. Sept. 5, 2019) ("The letter also identifies symptoms exhibited by [plaintiff], including chronic fatigue, status-post back surgery, chronic migraines, and chronic headaches. Although [the doctor's] letter does not indicate the precise date when [plaintiff's] symptoms began or the date upon which he considered her disabled, it does provide a sufficient basis to conclude that this evidence relates to the period on or before the date of the ALJ's

decision of November 3, 2017 – especially given the stated 1998 diagnosis of depression and the chronic nature of [plaintiff's] back pain and some of her symptoms. The Appeals Council therefore erred when it found that this additional evidence did not relate to the period at issue.") (citing *Williams*, 905 F.2d at 216).

As to whether Dr. Lockman's report and testimony are new, the Commissioner repeatedly referred to the evidence as "new." (*See, e.g.*, Dkt. 15 at 1, 2, 7, 8, 9, 13.) The Commissioner does not argue the evidence is cumulative, and given the detailed opinions set forth by Dr. Lockman, the Court concludes the evidence is new and not cumulative.

As to materiality, the Commissioner argues that "the evidence Plaintiff submitted after the adjudicated period ended was not material because it did not relate to the adjudicated time period." (*Id.* at 17.) However, the Court has concluded that the evidence did relate to the adjudicated time period and Dr. Lockman's opinions clearly relate to Plaintiff's impairments, including his memory and cognition, left leg pain, dizziness, and tinnitus. This renders the evidence material. *See Jackson v. Apfel*, 162 F.3d 533, 539 (8th Cir. 1998) ("In order to be material, the evidence must relate to [plaintiff's] condition on or before the date of the ALJ's decision."). Thus, the Court finds legal error in the Appeals Council's decision to not consider Dr. Lockman's report and deposition testimony.

This leads the Court to the question of a remedy. The Commissioner's brief "notes that Plaintiff has not put forth any argument concerning the good cause requirement of 20 C.F.R. §§ 404.970(b), 416.1470(b)." (Dkt. 15 at 8.) It is unclear whether the Commissioner is arguing that remand is inappropriate because Plaintiff did

12

not make a good cause argument in its brief or simply observing this fact. The Court notes that Plaintiff did argue "good cause" to the Appeals Council. (R. 484.) In any event, courts have rejected a "good cause" argument against remand where, as here, the Appeals Council did not make any determination as to good cause. *See, e.g.*, *Hennemann v. Kijakazi*, No. 4:21-CV-00038-NCC, 2022 WL 4093938, at *4 (E.D. Mo. Sept. 7, 2022) ("Whether and to what extent good cause exists under the Regulations is a matter for the Appeals Council to decide in the first instance, not this Court.") (quoting *Lucas*, 2019 WL 4221519 at *3) (cleaned up); *Lucas*, 2019 WL 4221519, at *3 ("To the extent the Commissioner also argues that the Regulations themselves require a claimant to show good cause before the Appeals Council will consider additional evidence submitted to it, whether and to what extent good cause exists under the Regulations is a matter for the Appeals Council to decide in the first instance, not this Court.") (footnote omitted). The Court agrees that the Appeals Council, not a reviewing court, is better suited to make the first determination of good cause.

Finally, the Commissioner argues that remand is unnecessary because Plaintiff has not shown there is a reasonable probability that Dr. Lockman's opinions would change the ALJ's decision and that, even if those opinions are considered, substantial evidence supports the ALJ's conclusions. (Dkt. 15 at 10-17.) However, as the Appeals Council did not consider Dr. Lockman's opinions, and drew no conclusion as to whether there is a reasonable probability that Dr. Lockman's opinions would change the ALJ's decision, the appropriate measure is to remand this matter so the Commissioner can resubmit Dr. Lockman's report and testimony to the Appeals Council for appropriate consideration

13

under 20 C.F.R. §§ 404.970 and 416.1470. *See Oberg v. Astrue*, 472 F. App'x 488, 491 (9th Cir. 2012) ("Finally, [plaintiff] argues that the Appeals Council erred when it did not remand the matter to the ALJ after she submitted two new lay affidavits attesting to her condition. The Appeals Council rejected them, as, of course, it was entitled to do. However, its reason for doing so—that the affidavits were about a time after the ALJ ruled—was incorrect. In general, we do not supply grounds that the agency has not relied upon in reaching its decision, and we will not do so here. It would be more efficient if the Commissioner addressed the matter in the first instance.") (citations and footnote omitted); *Craig M. v. Berryhill*, No. 18-CV-908 (NEB/DTS), 2019 WL 2648029, at *3 ("When the Appeals Council denies review without substantively considering newly submitted evidence, the reviewing court may remand the case if it finds the evidence is new, material, and relates to the period of disability at issue."), *R. & R. adopted*, 2019 WL 2644199; *Lucas*, 2019 WL 4221519, at *3-4 (finding remand appropriate where Appeals Council incorrectly found additional evidence did not relate to the period at issue).

      For these reasons, Plaintiff's Motion for Summary Judgment is granted in part and Defendant's Motion for Summary Judgment is denied. This matter is remanded to the Commissioner so she can resubmit Dr. Lockman's report and testimony to the Appeals Council for appropriate consideration under 20 C.F.R. §§ 404.970 and 416.1470.

## IV.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff Shawn C. H.'s Motion for Summary Judgment (Dkt. 10) is **GRANTED in part**;

2. Defendant's Motion for Summary Judgment (Dkt. 14) is **DENIED**;

3. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) so the Commissioner can resubmit Dr. Lockman's report and testimony to the Appeals Council for appropriate consideration under 20 C.F.R. §§ 404.970 and 416.1470; and

4. The announcement of decision scheduled for September 28, 2023 is **CANCELLED**.

DATED: September 5, 2023               *s/Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge